UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
CAREFUL BUS SERVICE, INC., ET AL.,
                              Plaintiffs,

               -against-

LOCAL 854 HEALTH AND WELFARE FUND,
                              Defendant.
------------------------------------------------------------ X

21 Civ. 10472 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs Careful Bus Service, Inc. and X-L Escort Services, Inc. bring this action for declaratory judgment, fraudulent inducement, fraudulent concealment and breach of the implied covenant of good faith and fair dealing against Defendant Local 854 Health and Welfare Fund. Plaintiffs move for summary judgment on all of the claims in the Complaint and seek a declaration that Plaintiffs do not owe a Termination Premium to Defendant. The parties engaged in no discovery and agree that their dispute can be resolved on summary judgment. For the reasons below, Plaintiffs are granted summary judgment on the claim seeking a declaratory judgment that they do not owe a Termination Premium to the Defendant; their motion for summary judgment seeking attorneys' fees is denied and the remaining causes of action are dismissed as moot.

**I.    BACKGROUND**

      The following facts are drawn from the parties' Rule 56.1 statements and other submissions on these motions. The facts are undisputed or based on evidence in the record, drawing all reasonable inferences in favor of the non-moving party. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022). At issue is the validity of a Termination Premium that Defendant charged Plaintiffs.

Plaintiff Careful Bus Service, Inc. operates school buses in Manhattan, Queens, Brooklyn and the Bronx.  Plaintiff X-L Escort Services, Inc. employs escorts for special needs children on school buses in those boroughs.  At all relevant times, bus drivers and escorts employed by Plaintiffs were members of the labor union, International Brotherhood of Teamsters Local 553 (the "Union").  Plaintiffs were contributing employers to Defendant Local 854 Health and Welfare Fund.  Defendant provided medical benefits to the Union participants and beneficiaries in the school bus industry until approximately September 2021.

Plaintiffs and the Union were parties to a collective bargaining agreement with a five-year term of July 1, 2018, through July 1, 2023 (the "CBA").  Defendant is a jointly trusteed, multiemployer welfare plan that provides health coverage to participating members of the Union.  Under the CBA, Plaintiffs were obligated to contribute to Defendant on behalf of employees who were members of the Union.  Defendant has six trustees: three appointed by the Union and three appointed by and/or appointed to represent contributing employers.

The CBA lists the amounts of required contributions for employees based on, among other things, length of service and chosen coverage.  Plaintiffs have consistently paid all contributions to Defendant in full and on time, and Defendant has never assessed late fees or instituted a collections action against Plaintiffs.

In 2020, Steve Malone, a union-appointed trustee of Defendant, informed Plaintiffs that Defendant would soon be insolvent.  Malone told Plaintiffs' vice president that Plaintiffs would benefit financially in the long term if they switched their health care coverage to a new welfare fund affiliated with Teamsters Local 210 (the "Local 210 Fund").  Malone negotiated an amendment to the CBA to that effect (the "CBA Amendment").  The CBA Amendment was executed on October 1, 2020, on behalf of the Union by Demos Demopoulos, who was also a

trustee of Defendant appointed by the Union.  Pursuant to the CBA Amendment, Plaintiffs began contributing to the Local 210 Fund on November 1, 2020.

In the meantime and prior to Plaintiffs' switching their healthcare coverage, on March 25, 2020, the three trustees appointed by the Union had attended a meeting of Defendant's Board of Trustees.  Since the beginning of the Covid-19 pandemic, Defendant's trustees have been conducting their meetings by teleconference.  Shortly before the March 25, 2020, meeting, New York City had closed its schools, which had the effect of shutting down many employers who contributed to Defendant.  At the same time, the financial markets declined, which affected Defendant financially.  The meeting had already been postponed from March 16, 2020, at the request of trustees appointed by employers due to the school shutdown.  The employer-appointed trustees again did not attend the March 25, 2020, meeting, so there was no quorum.  Due to concerns over Defendant's financial stability, the union-appointed trustees met anyway.

Certain of Defendant's trustees were concerned about the impact of "incurred but not reported" ("IBNR") expenses for employers who left the fund.  IBNR expenses are claims for medical services performed while a participant is eligible for benefits where the claims are not reported until after their eligibility ends, when contributions for that participant have ceased.  In general, when individual participants lose eligibility, IBNR expenses are covered by contributions for new participants -- for example if one employee is fired or retires and a replacement is hired.  When an entire employer leaves the fund, IBNR claims for its participants might be made up by other employers' contributions or by reserves.  In the context of the pandemic, as reserves decreased and many employers left the fund at once, Defendant was at risk of having insufficient reserves to cover its obligations.

At the March 25, 2020, meeting, trustee Demopoulos made a motion to amend the Trust Agreement to provide for a Termination Premium for former contributing employers. Demopoulos referenced "the burden placed on [Defendant] by the [IBNR] claims of participants who are employees or employee dependents of a former contributing Employer once that employer stops contributing to the [Defendant] under a collective bargaining agreement." Demopoulos moved to impose a Termination Premium "equal to the IBNR claims attributable to that employer's employees and dependents of such employees, as determined by the Fund Actuary, effective immediately." The motion further specified that "[f]or purposes of collection and enforcement, termination premium payments shall be treated as delinquent contributions under the Trust Agreement and ERISA." The motion was made, seconded and unanimously adopted by the union-appointed trustees, pending ratification by the full Board of Trustees.

Demopoulos circulated the motion by email to the employer-appointed trustees on March 25, 2020. All six trustees met on March 31, 2020, and Demopoulos made the same motion. The employer-appointed trustees' counsel, Jeffrey Pollack, stated that his clients needed more information about the proposal and asked several questions about it. Defendant's actuary stated that, "based on past experience, she would estimate IBNR for a given employer to be about twice the monthly claims cost." The employer-appointed trustees refused to vote at the meeting, and their counsel stated that he would report their votes the next day.

On April 1, 2020, Pollack sent an email to Defendant's trustees stating that two of the employer-appointed trustees had voted to approve the amendment, and the third had abstained. Pollack stated that the employer-appointed trustees had voted for the motion based on the actuary's "statement that the IBNR is usually 2x one month's welfare contribution." The two sets of unsigned meeting minutes from March 25 and 31, 2020, and the email from Pollack dated

April 1, 2020, are the only writings memorializing the purported amendment to add the Termination Premium to the Trust Declaration.  In the CBA, Plaintiffs "agree[d] to be bound by the terms, obligations and conditions of the [Trust Declaration], as amended and as may hereafter be amended."  The CBA Amendment changed the welfare fund from Defendant to the Local 210 Fund and changed the contribution rates but did not otherwise alter the CBA.

On December 10, 2020, Defendant sent Plaintiffs a letter demanding payment of a "Termination Premium" in the amount of $234,278.  Defendant locates its authority to assess a Termination Premium in an amendment to Defendant's Trust Declaration purportedly approved by a vote of the trustees on March 31 and April 1, 2020.  Prior to the December 10, 2020, letter, Plaintiffs had no notice that any such amendment had been proposed, voted on or adopted.  On or about January 25, 2021, Plaintiffs replied to the December 10, 2020, letter stating that they considered the Termination Premium to be a nullity.  Defendant did not respond to the January 25, 2021, letter.  Defendant sent another letter to Plaintiffs on November 3, 2021, demanding payment and declaring Plaintiffs in default.  Plaintiffs have not paid the Termination Premium.

In 2021, the union-appointed and employer-appointed trustees engaged in arbitration before the American Arbitration Association to resolve their dispute over whether the Termination Premium should apply only to employers who voluntarily left the fund (the employer-appointed trustees' position) or all employers who left the fund (the union-appointed trustees' position).  The arbitrator found in favor of the union-appointed trustees' position.  In the course of the arbitration, Plaintiffs' president swore an affidavit clarifying the circumstances under which Plaintiffs had left Defendant.  Neither party to the arbitration questioned the validity of the Termination Premium.

## II. STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record. *See* Fed. R. Civ. P. 56(c)(1)(A). "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021).

## III. DISCUSSION

### A. Declaratory Judgment

Plaintiffs' motion for summary judgment on their claim for declaratory judgment is granted because the Trust Declaration was not validly amended to add the Termination Premium.

"ERISA authorizes fiduciaries of an employee benefit plan to bring suit to compel the payment of delinquent fund contributions." *32BJ N. Pension Fund v. Nutrition Mgmt. Servs.*

*Co.*, 935 F.3d 93, 98 (2d Cir. 2019) (citing 29 U.S.C. §§ 1132(g), 1145) (footnote omitted). This action is the mirror image of a suit to compel payment of delinquent contributions. Plaintiffs seek a declaration that they do not owe Defendant a Termination Premium.

An employer may be compelled to make a contribution only if it "objectively manifest[s] its intent to be bound to an ERISA plan document." *Id.* at 99. Whether an employer has manifested such an intent is determined using "ordinary principles of contract law." *Id.* (quoting *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 763 (2018)). One such principle is "the well-established doctrine of incorporation by reference." *Id.*

In the CBA, Plaintiffs "agree[d] to be bound by the terms, obligations and conditions of the [Trust Declaration], as amended and as may hereafter be amended." Plaintiffs thereby manifested their intent to be bound by the terms of the Trust Declaration, and the Trust Declaration was incorporated by reference into the CBA. *Cf. id.* at 100 (finding no intent to be bound where the CBA only "memorialized the parties' 'understanding' that the Fund—not [the Employer]—would be governed by the terms of a future trust agreement"). The Trust Declaration also sets forth a procedure for amendment:

> The Provisions of this Agreement and of the Plan may be amended at any time, and from time to time by a majority of all Trustees voting in person or by proxy at a meeting of which there is a quorum present, subject to the collective bargaining agreements, and applicable law, ruling or regulation. Any amendment to this Agreement shall be provided to the Union and the Employers.

If the trustees purport to amend the Trust Declaration but "fail[] to comply with" the terms of the Trust Declaration governing how it may be amended, "that decision [is] invalid under the terms of the" Trust Declaration. *Massaro v. Palladino*, 19 F.4th 197, 211 (2d Cir. 2021). The CBA "objectively manifest[s] [Plaintiffs'] intent to be bound to" validly enacted amendments. *32BJ*, 935 F.3d at 99.

The undisputed facts establish that the purported amendment to impose the Termination Premium was not adopted "by a majority of all Trustees voting in person or by proxy at a meeting of which there is a quorum present" as required by the Trust Declaration.  Defendant contends that the Termination Premium was adopted when the union-appointed trustees voted in favor of the amendment on March 31, 2020, and the next day, counsel for the employer-appointed trustees emailed to say that two of his three clients had also voted in favor.  Both Defendant's contention and the unsigned March 31, 2020, meeting minutes show that the employer trustees did not vote at the meeting and were not "present" when they purportedly did vote.  There is no need to decide whether holding meetings by teleconference comports with the Trust Declaration's requirement of voting "in person or by proxy" when a quorum is "present."  At no point did a majority of the trustees vote in any manner during any "meeting."  The purported amendment adding the Termination Premium to the Trust Declaration is therefore invalid and not binding on Plaintiffs.  *See Massaro*, 19 F.4th at 211; *32BJ*, 935 F.3d at 99.

The purported Termination Premium amendment also is not incorporated by reference in the CBA along with the Trust Declaration itself, because it is not "described in the contract such that it is identifiable beyond all reasonable doubt." *Eshaghpour v. Zepsa Indus., Inc.*, 101 N.Y.S.3d 836, 837 (1st Dep't 2019).  Defendant argues that the initial incorporation of the Trust Declaration was sufficient to incorporate all valid future amendments, regardless of whether Plaintiffs ever knew about them.  But even assuming that is true, the CBA cannot be read unambiguously to incorporate amendments that do not comport with the Trust Declaration itself.

Plaintiffs are therefore entitled to summary judgment on their claims for declaratory relief.  The same conclusion is warranted even assuming all of Defendants' proffered evidence is admissible, even assuming unsigned meeting minutes and an email constitute a valid writing for

8

purposes of ERISA, and even assuming that another requirement of the amendment provision of the Trust Declaration -- the requirement to provide the amendment to Plaintiffs -- is not a condition precedent.  Because the amendment was not procedurally valid, the question of whether the trustees had the authority to amend the Trust Declaration to add the Termination Premium is not addressed.

### B.       Other Claims

The remaining claims for fraudulent inducement, fraudulent concealment and breach of the implied covenant of good faith and fair dealing are dismissed as moot.  Each of them seeks as relief a declaration that Plaintiffs do not owe a Termination Premium to Defendant.  That relief having been granted, the other claims are moot.

### C.       Attorneys' Fees

Neither party is entitled to attorneys' fees.  Section 1132(g)(2) of Title 29 of the U.S. Code is inapplicable because no "judgment in favor of the plan" has been awarded.  As discussed above, this case is a mirror image of an action by a fiduciary, but even assuming fees could be awarded on a discretionary basis to Plaintiffs, such an award is inappropriate on the facts of this case.  When a party has achieved "some degree of success on the merits," courts often consider "five factors, known in this Circuit as the '*Chambless* factors,'" which are:

> (1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Donachie v. Liberty Life Assurance Co. of Bos.*, 745 F.3d 41, 46 (2d Cir. 2014) (in part quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 249 n.1, 255 n.8 (2010)).  The record

suggests that, in attempting to amend the Trust Declaration, Defendant was trying to ensure that it could meet its obligations to "all participants and beneficiaries." *Id.* Plaintiffs are entitled to judgment as a matter of law because of the dispositive procedural defect in the amendment, but many of Defendant's arguments, including about its substantive authority to collect the Termination Premium, are not facially meritless, and certainly do not suggest bad faith. This dispute was precipitated by Defendant's looming insolvency in light of the Covid-19 pandemic, so it is not clear that Defendant could satisfy a fee award without significant hardship. As Defendant attempted the drastic action it did due to unprecedented circumstances, deterrence of future potential violators also does not justify a fee award.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part. Plaintiffs' motion for summary judgment on its claim for declaratory judgment, seeking a declaration that Plaintiffs do not owe a Termination Premium to Defendant, is GRANTED. Plaintiffs' motion for summary judgment on the Complaint's other claims is DENIED as moot, and both parties' requests for attorneys' fees are DENIED.

The Clerk of Court is respectfully directed to close the motion at Docket Number 16.

Dated: November 10, 2022
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**